UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ANNDELL R. LAWRENCE, JR., )<br>)<br>　　　　Plaintiff, )<br>)<br>v. )<br>)<br>LARESHA REED, et al., )<br>)<br>　　　　Defendants. ) | Case No. 1:22-CV-102 SNLJ |

## MEMORANDUM AND ORDER

Self-represented Plaintiff Anndell R. Lawrence, Jr. brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is now before the Court upon the motion of Plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. ECF Nos. 2 & 4. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $19.97. *See* 28 U.S.C. § 1915(b)(1). Based on a review of the complaint under 28 U.S.C. § 1915(e)(2)(B), the Court will direct Plaintiff to file an amended complaint on the court-provided form in compliance with the instructions set out below. Furthermore, as there is no constitutional right to appointment of counsel in civil cases and it would be premature to grant appointment at this stage in the proceeding, the Court will deny Plaintiff's motion for counsel subject to refiling at a later date. The Court warns Plaintiff that his failure to comply with this Order could result in dismissal of this action.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

State-prisoner Plaintiff filed two motions for leave to proceed *in forma pauperis* in this case. ECF Nos. 2 & 4. Soon after the filing of the second motion, the Court received a certified inmate account statement[1] from Plaintiff. ECF No. 5. Although Plaintiff states in his motions that he has no income, his certified inmate account statement shows average monthly deposits of $99.83 over a six-month period. *Id.* The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $19.97, which is twenty percent of Plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district

---

[1] The Court notes that Plaintiff filed an account listing with his second motion to proceed *in forma pauperis*, ECF No. 4 at 4-5; however, that statement was not certified like the latter-filed document, ECF No. 5. As such, the Court will use the certified account statement for calculation of Plaintiff's initial partial filing fee.

court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## The Complaint

Plaintiff[2] brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against six defendants: (1) Laresha Reed; (2) Skylar Blake; (3) Crissy Woodz; (4) Seth Stephenson; (5) Unknown Far; and (6) Rosey Williams. ECF No. 1 at 1-5. At the time of case initiation, Plaintiff was incarcerated at Potosi Correctional Center. *Id.* at 2. However, the allegations of the complaint concern an incident which occurred while Plaintiff was confined at Southeast Correctional Center ("SECC") in Charleston, Missouri. *Id.* at 6-7, 12. Plaintiff

---

[2] Plaintiff states in his complaint that he has had a case dismissed on the basis of the "three strikes rule," referring to a case from the Western District of Missouri "6:2018-CV03300." ECF No. 1 at 22. Based on an independent review of federal court records, it appears that Plaintiff did have an excessive force case in that court dismissed after summary judgment was granted to the defendants. *See Lawrence v. Box*, No. 6:18-cv-03300-BP (W.D. Mo. filed Sept 7, 2018). However, the records search reveals no other cases filed by Plaintiff and as such, the Court does not find him to be subject to the filing restrictions of the three strikes rule, 28 U.S.C. § 1915(g).

identifies the six defendants as employees of the Missouri Department of Corrections ("MDOC"), working at SECC. ECF No. 1 at 1-5. All defendants are correctional officers except defendant Williams, who is a nurse. The defendants are named in their official capacities only. *Id.* Since complaint filing, Plaintiff has been transferred to Farmington Correctional Center, where he is currently confined. ECF No. 6.

The allegations of the complaint focus on a November 2, 2021 incident where Plaintiff was attacked by a fellow inmate at SECC, resulting in multiple stab wounds. *Id.* at 6. Plaintiff states that he was being escorted by defendant correctional officer Reed to the shower in the solitary confinement unit of SECC, when unrestrained fellow inmate, Alex Davis, charged towards him with a weapon. Plaintiff describes Davis as his "known enemy." *Id.* According to Plaintiff, Reed responded by releasing Plaintiff and putting her back on the wall. Plaintiff states that as he ran away from Davis, he was stabbed by Davis multiple times and dislocated his shoulder when he hit a phone cage in his attempt to flee. Plaintiff then ran into a different housing unit at SECC where he was "grabbed" by defendant Stephenson. Plaintiff asserts that while he was held by Stephenson, Davis continued to stab him multiple times until "female staff" yelled words of warning. When Stephenson realized what was happening, he pushed Plaintiff into another offender while the weapon was stuck in Plaintiff's back. Plaintiff began to run again and states that he was stabbed another time. Eventually "other staff came to assist" and used pepper spray to get control of the situation. Plaintiff was helped to his feet by defendant Woodz. *Id.*

After the incident, Plaintiff was evaluated in the SECC medical unit and then taken to an off-site medical facility. *Id.* Plaintiff sustained "7-10" stab wounds, for which he received thirty-two (32) stitches. *Id.* at 6-7. He was brought back to SECC within a couple of hours. *Id.* at 7. Plaintiff alleges that an "outside doctor" gave orders that he should remain "in the ICU unit" at

SECC for ten (10) days. However, Plaintiff states that he only stayed in the SECC ICU for eight (8) hours before being "placed on the top walk" of a long-term segregation unit. *Id.*

Two days after the stabbing, defendant nurse Williams and a nonparty correctional officer were distributing medications at SECC when they knocked on Plaintiff's cell door. Plaintiff got up to receive his medication but fell when his back gave out due to injuries sustained during the stabbing. Plaintiff called to nurse Williams and the correctional officer for help because he could not move and was in "terrible pain." According to Plaintiff, Williams responded to his pleas for assistance by saying, "If you don't get off of the floor and get your med we're leaving." *Id.* Plaintiff explained that he was in pain but Williams just walked away, stating that Plaintiff had "refused his meds by laying down." *Id.*

Plaintiff states that SECC security protocols were not being followed by defendant Reed when the November 2021 stabbing occurred. *Id.* at 6. According to Plaintiff, at least two officers should be present to escort a solitary confinement prisoner to the shower and on this occasion, there was only defendant Reed with him. *Id.*

Plaintiff further alleges that the five defendant correctional officers failed to protect him from attack. He asserts that they failed to take "the proper steps to secure [his] safety ultimately ending in [him] being seriously injured." *Id.* at 7. As to defendant Reed, Plaintiff alleges that when Davis charged towards Plaintiff, she did not try to intervene to help Plaintiff nor did she use her pepper spray to try to subdue Davis. *Id.* at 6. Plaintiff describes that "other officers gave chase but at no time did they secure [his] safety or shield" him from attack. *Id.* It appears that these chasing officers were defendants Woodz, Blake, Reed, and Far. *Id.*

As to nurse Williams, Plaintiff asserts that she knew he had been recently stabbed because it was in the "medical chronolog [sic]." *Id.* at 7. As such, he asserts that she "neglected her duty as a medical professional" when she "discontinued [his] pain medication without a doctor[']s

- 5 -

approval" in order to "arbitrarily cause [Plaintiff] pain and discomfort" under "the guise" of "medical non-feasance." According to Plaintiff, Williams wrote him up on a conduct violation for a threat, stating that he had "become agitated," "so that she could justify refusing [his] medication." *Id.*

Plaintiff included copies of SECC grievance documents with his complaint.[3] ECF No. 1 at 8-9, 15-18, & 20-21. In February 2021, Plaintiff filed a grievance (SECC-21-844) concerning the November 2021 attack by inmate Davis. *Id.* at 15. In the grievance, Plaintiff complains that a nonparty correctional officer Smith should have handcuffed Davis before opening Davis's cell door, per MDOC policy for Administrative Segregation inmates. According to Plaintiff, Davis was hiding under the bed when the cell door was opened. But, regardless, officer Smith should have known that Davis was assigned to that cell based on the information that should be posted on the outside of the cell door. The SECC Warden denied Plaintiff's grievance concerning correctional officers failing to protect Plaintiff from attack, stating that a formal investigation found insufficient evidence that an officer was complicit in Plaintiff's assault. *Id.* at 16. Plaintiff appealed the grievance response in March 2022 and that appeal was denied in April. *Id.* at 20-21.[4]

For relief, Plaintiff seeks a total of 3.9 million dollars in damages. *Id.* at 12. He would also like an investigation into the SECC medical administration and staff. *Id.* at 13.

---

[3] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[4] Plaintiff included documentation on a second grievance (SECC 21-741) that complained about the length of an Administrative Segregation placement resulting from a Level 2 violation. ECF No. 1 at 18. The grievance was denied as untimely since it was filed in February 2022 while the initial informal resolution request was responded to on "10/28/21" – a date prior to the stabbing at issue in the instant complaint. However, when Plaintiff appealed the grievance denial, he added allegations about nurse Williams violating his Eighth Amendment right to be free of cruel and unusual punishment when she refused to give him medications and caused him "pain for 5 days." *Id.* at 8. The MDOC Deputy Division Director denied the grievance appeal, stating that Plaintiff cannot add new complaints to a grievance at the appeal stage. *Id.* at 9.

**Discussion**

Based on a careful review and liberal construction of the complaint, Plaintiff has not adequately alleged claims to withstand review under 28 U.S.C. § 1915(e)(2). Because Plaintiff is self-represented and has presented serious allegations to the Court, he will be allowed to amend his complaint in accordance with the instructions set forth below. Plaintiff should consider the following legal issues in filing in his amended complaint.

I.   **Capacity in which Claims are Brought Against Defendants**

A plaintiff can bring a § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). In this case, Plaintiff only names the six defendants in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

Here, Plaintiff identifies all defendants as employees of MDOC.[5] Naming a state official in his or her official capacity is the equivalent of naming the government entity that employs the official – the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71. In

---

[5] Although Plaintiff identifies nurse Williams as an MDOC employee, many medical and mental health services at Missouri state prisons are provided by employees of Centurion Health – the private corporation contracted by the State to provide medical services to incarcerated prisoners. Plaintiff should clarify in his amended complaint who employs defendant Williams.

addition, in the absence of a waiver, the Eleventh Amendment[6] bars a § 1983 suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998); *see also Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment.").

Accordingly, Plaintiff's official-capacity claims for monetary damages[7] against all six defendants are barred by sovereign immunity and subject to dismissal. Plaintiff has failed to name a defendant suable under § 1983. If Plaintiff wants his claims against the individual defendants to proceed, he must name the defendants in their individual capacities in his amended complaint.

## II. Insufficient Allegations: Failure to State a Claim

Even if Plaintiff names the defendants in their individual capacities in his amended complaint, his case may still be subject dismissal. First, to the extent that Plaintiff seeks relief for violations of noncompliance with MDOC or SECC rules, this is not a valid claim under § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is well established that there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (*citing Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner*

---

[6] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

[7] To the extent that Plaintiff seeks injunctive relief in this matter, such relief is barred by his transfer to a new prison. As discussed above, the allegations at issue occurred at SECC; however, Plaintiff is currently confined at Farmington Correctional Center. The Eighth Circuit has consistently held that a prisoner's transfer to a different facility where the alleged unlawful conduct does not exist, renders moot a prisoner's request for injunctive relief. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (dismissed as moot prisoner plaintiff's claim for injunctive relief to improve prison conditions because plaintiff was transferred to a different unit); *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978) (prisoner's transfer to a different state penitentiary rendered moot his claim for injunctive relief). Because Plaintiff here has been transferred to a different institution and there is no indication that the same medical staff work at the new facility, his request for injunctive relief is moot.

*v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability).

Second, "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). Therefore, to the extent that Plaintiff makes allegations against unnamed parties in his complaint, the named defendants cannot be held responsible for these nonparty actions. Furthermore, Plaintiff must clearly state what actions each named defendant took which deprived Plaintiff of his constitutional rights. Broad, general allegations do not establish personal involvement or direct responsibility of a defendant.

Finally, although civil rights pleadings should be construed liberally, at the very least, the complaint must contain facts which state a claim as a matter of law. *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). Plaintiff's complaint contains insufficient factual allegations to state claims for failure to protect or deliberately indifferent medical care.

**A. Failure to Protect or Intervene against Correctional Officer Defendants**

Plaintiff alleges that the five correctional officer defendants – Reed, Woodz, Stephenson, Far, and Blake – failed to protect him from attack by known-enemy-inmate Davis. The Supreme Court has made it clear that the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). As such, prison officials must take reasonable measures to guarantee inmate safety and protect prisoners from violence by other inmates. *Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004) (citing *Farmer*, 511 U.S. at 832-33). There are limitations to this guarantee, however, as "prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's

safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (internal quotations and citation omitted).

This claim has an "objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837). "As prisons are inherently dangerous environments," not every injury suffered by a prisoner at the hands of another inmate, is grounds for constitutional liability. *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (citing *Farmer*, 511 U.S. at 834).

Here, Plaintiff alleges that the correctional officer defendants failed to take proper steps to secure his safety. However, Plaintiff's pleadings indicate that inmate Davis hid in his cell to avoid being handcuffed before the cell door was opened, then rushed out and attacked Plaintiff with a homemade weapon. Davis's cell door was not opened by any of the named defendants. Even if Davis was known to be an enemy of Plaintiff's, there are no allegations indicating that any of the named defendants were aware of, and deliberately disregarded, evidence that Davis was planning this attack. Furthermore, once the risk of harm from Davis became apparent, it is not clear from the allegations that named correctional officer defendants failed to intervene or protect Plaintiff.

Plaintiff alleges that Reed did not try to intervene to help Plaintiff nor did she use her pepper spray to try to subdue Davis. However, Plaintiff admits that Reed was one of the correctional officers attempting to chase down Plaintiff and Davis, as they ran out of one housing unit and into another. Based on Plaintiff's description of the incident, it sounds like Reed was just as surprised by Davis's attack as Plaintiff himself. As such, it does not seem unreasonable that

she backed into a wall in surprise and that she did not have time to respond with her pepper spray before Plaintiff fled with Davis chasing. As to other correctional officer defendants, Plaintiff asserts that they gave chase but at no time did they secure his safety or shield him from attack. However, Plaintiff admits that female staff called out a warning to defendant Stephenson and that SECC staff did eventually control and subdue Davis with pepper spray. Unfortunately, control was not obtained until after Plaintiff was injured.

In order for these claims to survive review, Plaintiff must allege specific factual allegations against each named defendant to show that they exhibited a deliberate or callous indifference to his safety, in his amended complaint.

### B. Deliberately Indifferent Medical Care against Nurse Williams

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted). To that end, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). Deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care.

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  When a delay in treatment is alleged to have violated an inmate's constitutional rights, the objective severity of the deprivation should be measured by reference to the effect of the delay in treatment.  *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016).

In this case, Plaintiff alleges that he suffered unnecessary pain for five (5) days due to nurse Williams refusing to provide him with his prescribed medications after the stabbing incident. Delayed access to prescribed medical care for non-medical reasons may constitute deliberate indifference in certain circumstances.  *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).  However, as discussed above, Plaintiff fails to name a suable defendant under § 1983.

### III.    Amended Complaint Instructions

Plaintiff should file an amended complaint, in an attempt to cure these pleading deficiencies.  Plaintiff is advised that the filing of an amended complaint **completely replaces** the original complaint and all supplements, and so it must include all claims Plaintiff wishes to bring. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").  Any claims from the original complaint or any supplements that are not included in the amended complaint will be deemed abandoned and will not be considered.  *Id*.  Plaintiff must **type or neatly print** the amended complaint on the Court-provided prisoner civil rights complaint form, and the amended complaint must comply with the Federal Rules of Civil Procedure.  *See* E.D. Mo. L.R. 2.06(A).

The Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner.  Even self-represented litigants are obligated to abide by the Federal Rules of Civil Procedure and to plead specific facts as to each named defendant.  *See U.S. v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).  Plaintiff is required to set out his alleged claims

in a simple, concise, and direct manner, and also the facts supporting his claims as to each named defendant.  *See* Fed. R. Civ. P. 8(a)(2) (complaint should contain short and plain statement of claims); 8(d)(1) (each claim shall be simple, concise, and direct); 10(b) (parties are to separate their claims within their pleadings and the contents of which shall be limited as far as practicable to a single set of circumstances).  Plaintiff should fill out the complaint form in its entirety.

In the "Caption" section of the complaint form, Plaintiff must state the first and last name, to the extent he knows it, of the defendant or defendants he wants to sue.  *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties").  If there is not enough room in the caption, Plaintiff may add additional sheets of paper.  However, all the defendants must be clearly listed.  Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both.  Plaintiff should avoid naming anyone as a defendant unless that person is directly related to his claim(s).

In the "Statement of Claim" section, Plaintiff should begin by writing a defendant's name.  In separate, numbered paragraphs under that name, Plaintiff should write the specific facts supporting his claim or claims against that defendant.  If Plaintiff is suing more than one defendant, he should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting his claim or claims against that defendant.  Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other.  *See* Fed. R. Civ. P. 20(a)(2).  Alternatively, Plaintiff may choose a single defendant, and set forth as many claims as he has against him or her.  *See* Fed. R. Civ. P. 18(a).  Plaintiff's failure to make specific factual allegations against any defendant will result in that defendant's dismissal.  Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or

a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If Plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). It is not enough for Plaintiff to refer to a group of defendants and make general allegations against them. Instead, Plaintiff must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim.").

## Appointment of Counsel

Finally, Plaintiff has filed a motion for appointment of counsel. ECF No. 3. The appointment of counsel for an indigent plaintiff in a civil matter lies within the discretion of the Court. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). Once the plaintiff has alleged a *prima facie* claim, the Court must determine the plaintiff's need for counsel to effectively litigate his claim. *In re Lane*, 801 F.2d 1040, 1043 (8th Cir. 1986). The standard for appointment of counsel in a civil case is whether both the plaintiff and the Court would benefit from the assistance of counsel. *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995), *abrogated on other grounds by Doe v. Cassel*, 403 F.3d 986, 989 (8th Cir. 2005). This determination involves the consideration of several relevant criteria, including "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to

present the claims, and the complexity of the legal arguments." *Phillips*, 437 F.3d at 794 (citing *Edgington*, 52 F.3d at 780).

In this matter, the Court finds that appointment of counsel is not warranted at this time. The action appears to involve straightforward questions of fact rather than complex questions of law. Further, the request for counsel is premature, as defendants have not yet been served, and the Court has not issued any Case Management Order. The Court concludes that the appointment of counsel would not be of sufficient benefit to the Court or to Plaintiff at this time, and will deny Plaintiff's motion for appointment of counsel, without prejudice.

## Conclusion

Plaintiff should consider the legal issues discussed herein and file an amended complaint which contains all of the relevant factual allegations and asserts all of the claims Plaintiff wishes to bring. If Plaintiff fails to file an amended complaint on a Court-provided form within **thirty (30) days** in accordance with the instructions set forth herein, the Court may dismiss this action without prejudice and without further notice to Plaintiff.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's first motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $19.97 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that Plaintiff's second motion for leave to proceed *in forma pauperis* [ECF No. 4] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to Plaintiff a blank copy of the Court's Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that, within **thirty (30) days** of the date of this Order, Plaintiff shall file an amended complaint on the Court-provided form and in compliance with the Court's instructions.

**IT IS FURTHER ORDERED** that upon submission of the amended complaint, the Court shall again review this action pursuant to 28 U.S.C. §1915.

**IT IS FINALLY ORDERED** that Plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED without prejudice**.

**Plaintiff's failure to timely comply with this Order shall result in the dismissal of this action, without prejudice and without further notice.**

Dated this 26th day of October, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE