UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ANNDELL R. LAWRENCE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:22-CV-102 SNLJ |
| ) | |
| LARESHA REED, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon the amended complaint of self-represented Plaintiff Anndell R. Lawrence, Jr. ECF No. 11. The Court previously granted Plaintiff *in forma pauperis* status and reviewed his § 1983 complaint under 28 U.S.C. § 1915. ECF No. 7. Based on that review, the Court directed Plaintiff to file an amended complaint on a Court-provided form and in compliance with the Court's instructions. The Court warned Plaintiff that his amended complaint would also be reviewed under § 1915. After the Court granted Plaintiff an extension of time (ECF No. 10), he filed his amended complaint on January 6, 2023. For the reasons discussed below, the Court will dismiss the amended complaint for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which

is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

**Background**

Although Plaintiff is currently confined at South Central Correctional Center, the allegations at issue involve an incident that occurred while Plaintiff was confined at Southeast Correctional Center ("SECC") in Charleston, Missouri. ECF No. 1 at 6-7, 12. Plaintiff brought this action under 42 U.S.C. § 1983, alleging violations of his civil rights against defendants identified as Missouri Department of Corrections ("MDOC") employees, working at SECC. *Id.* at 1-5. In his original complaint, Plaintiff stated that he was attacked by a fellow inmate in November 2021. Plaintiff alleged that defendants failed to protect him, resulting in him suffering

multiple stab wounds. Plaintiff further asserted that he subsequently received inadequate medical care for his injuries.

The Court reviewed Plaintiff's original complaint under 28 U.S.C. § 1915(e)(2) and found that the allegations, as plead, were not sufficient to withstand initial review. *See* ECF No. #7. Because Plaintiff is self-represented, the Court directed him to file an amended complaint to attempt to cure these pleading deficiencies. After receiving an extension of time, Plaintiff filed his amended complaint on January 6, 2023.

## The Amended Complaint

Plaintiff[1] filed his amended 42 U.S.C. § 1983 against nine defendants: (1) Southeast Correctional Center ("SECC"); (2) Seth Stephenson (correctional officer ("CO")); (3) Laresha Reed (CO); (4) Skylar Blake (CO); (5) Crissy Woodz (CO); (6) Jordan Far (CO);[2] (7) Unknown Smith (CO); (8) Rosey Williams (nurse); and (9) Centurion Health. ECF No. 11 at 1-5. Defendants are named in both their individual and official capacities. *Id.*

Plaintiff asserts essentially the same factual allegations as made in his original complaint. According to Plaintiff, he was attached by a fellow inmate – known "enemy" Alex Davis – in November 2021 at SECC, resulting in multiple stab wounds. *Id.* at 7-8. Plaintiff states that he was being escorted, in handcuffs, by defendant CO Reed to the shower in the solitary confinement unit of SECC, when unrestrained Davis charged towards him with a weapon. Plaintiff alleges that Davis had been hiding under his bed in his cell waiting to attack. *Id.* at 10. According to Plaintiff,

---

[1] As in his original complaint, Plaintiff states in his amended complaint that he has had a case dismissed on the basis of the "three strikes rule," referring to a case from the Western District of Missouri: "6:18-CV-03300-BP." ECF No. 11 at 32. Based on an independent review of federal court records, it appears that Plaintiff did have an excessive force case in that court dismissed after summary judgment was granted to the defendants. *See Lawrence v. Box*, No. 6:18-cv-03300-BP (W.D. Mo. filed Sept 7, 2018). However, the records search reveals no other cases filed by Plaintiff and as such, the Court does not find him to be subject to the filing restrictions of the three strikes rule, 28 U.S.C. § 1915(g).

[2] Although Plaintiff was unaware of this defendant's first name upon filing the amended complaint, Plaintiff subsequently filed a letter with the Court providing this defendant's full name. *See* ECF No. 12. The Clerk of Court will be directed to update the docket sheet accordingly.

3

Reed and Far should have noticed that Davis was missing and Smith, who was working in the control center, should have made sure "all staff members working Ad-seg [knew] how many offenders [were] in each cell." *Id.* at 7. Also, Plaintiff asserts that SECC security protocols were not followed, claiming that at least two correctional officers should have been present at his solitary-confinement cell door before it was opened. *Id.*

When Davis attacked, Plaintiff states that CO Reed responded by releasing Plaintiff and putting her back on the wall. Plaintiff ran from Davis but was stabbed multiple times and dislocated his shoulder when he hit a phone cage in his attempt to flee. *Id.* at 8. Plaintiff eventually ran into a different housing unit at SECC and was "grabbed" by CO Stephenson. Plaintiff asserts that while he was detained by Stephenson for approximately "20 seconds," he was stabbed several more times by Davis. Then the staff that "gave chase" – Woodz, Blake, Reed, Far, and Smith – warned Stephenson what was happening and he released Plaintiff. However, when Stephenson released Plaintiff, he pushed Plaintiff into Davis while the weapon was stuck in Plaintiff's back. Plaintiff began to run again and states that he was stabbed another time. *Id.* at 9. Eventually "other staff members" came to assist and used pepper spray to get control of the situation. *Id.* at 9-10.

Plaintiff argues that correctional officer defendants failed to protect him from attack by Davis by not handcuffing Davis and failing to follow security protocols. *Id.* at 10. He also asserts that the correctional officers did not try to intervene or to control the incident with their pepper spray. *Id.* at 8.

After the incident, Plaintiff was evaluated in the SECC medical unit and then taken to an off-site hospital. *Id.* at 11. Plaintiff sustained between "7 and 10 stab wounds," for which he received thirty-two (32) stitches. *Id.* at 11, 15. He was brought back to SECC within a couple of hours. *Id.* at 11. Plaintiff alleges that an "outside doctor" gave orders that he should remain "in

4

the ICU unit" at SECC for ten (10) days. However, Plaintiff states that he only stayed in the SECC ICU for seven (7) hours before being "placed on the top walk" of a long-term segregation unit. *Id.*

Two days after the stabbing, defendant nurse Williams and a nonparty CO were distributing medications at SECC when they knocked on Plaintiff's cell door. *Id.* at 12. Plaintiff fell on his way to the door, when his back gave out due to injuries sustained during the stabbing. Plaintiff called to nurse Williams for help "due to the pain." According to Plaintiff, Williams responded to his pleas for assistance by saying: "If you do not get up off of the floor … then we are walking away." Plaintiff explained that he was in pain but Williams just walked away, stating that Plaintiff had "refused his meds by laying on the floor." Plaintiff accuses Williams of "medical non-feasance" by refusing him his pain medications and neglecting her job duties, causing him pain and discomfort. *Id.* at 13. Plaintiff also asserts that Williams wrote him up for a false conduct violation to use as a "guise" to justify her actions and to get his pain medications discontinued by a doctor's approval. Plaintiff does not allege how long Williams denied him medications but he states he was removed from his cell the next day for "medical reasons." *Id.*

For relief, Plaintiff seeks a total of 30.2 million dollars in damages. *Id.* at 16. He would also like an investigation into the SECC medical administration and staff. *Id.* at 17.

**Discussion**

Having carefully reviewed and liberally construed Plaintiff's allegations, the Court finds that the amended complaint fails to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B). First, defendant SECC is not a suable defendant under §1983. Second, the facts alleged against CO defendants are insufficient to state an Eighth Amendment claim of failure to protect. Third, Plaintiff fails to plead a policy, custom, or official action by defendant corporation Centurion Health that injured him. Finally, Plaintiff's allegation of a denial or delay in receipt in pain medications by nurse Williams, does not rise to the level of deliberate indifference. Medical

5

negligence or nonfeasance is not enough to state an Eighth Amendment claim of cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). For all of these reasons, this case will be dismissed.

## I. Defendant Southeast Correctional Center

Plaintiff brings this action under 42 U.S.C. § 1983. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, a State is not a 'person' under § 1983 against whom a claim for money damages can be asserted. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). SECC, as a MDOC facility, is an arm or division of the State of Missouri. An agency exercising state power is also not a "person" subject to a suit under § 1983. *E.g., Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991) (agency exercising state power as an arm of the compacting state is not "person" subject to § 1983 suit). Thus, Plaintiff's § 1983 claims against SECC fail to state a claim upon which relief may be granted.

## II. Correctional Officer Defendants: Reed, Woodz, Stephenson, Far, Blake, and Smith

### a. Official Capacity Claims

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

Here, Plaintiff identifies all CO defendants as employees of MDOC. Naming a state official in his or her official capacity is the equivalent of naming the government entity that employs the official – the State itself. *Will*, 491 U.S. at 71. However, "neither a State nor its

officials acting in their official capacities are 'persons' under § 1983." *Id.* In addition, in the absence of a waiver, the Eleventh Amendment[3] bars a § 1983 suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998); *see also Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment."). For these reasons, Plaintiff's official-capacity claims for monetary damages[4] against all CO defendants are subject to dismissal.

### b. Failure to Protect

Plaintiff alleges that the six CO defendants failed to intervene and protect him from attack by known-enemy-inmate Davis. The Supreme Court has made it clear that the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). As such, prison officials must take reasonable measures to guarantee inmate safety and protect prisoners from violence by other inmates. *Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004) (citing *Farmer*, 511 U.S. at 832-33). There are limitations to this guarantee, however, as "prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (internal quotations and citation omitted).

---

[3] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

[4] To the extent that Plaintiff seeks injunctive relief in this matter, such relief is barred by his transfer to a new prison. As discussed above, the allegations at issue occurred at SECC; however, Plaintiff is currently confined at South Central Correctional Center. The Eighth Circuit has consistently held that a prisoner's transfer to a different facility where the alleged unlawful conduct does not exist, renders moot a prisoner's request for injunctive relief. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (dismissed as moot prisoner plaintiff's claim for injunctive relief to improve prison conditions because plaintiff was transferred to a different unit); *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978) (prisoner's transfer to a different state penitentiary rendered moot his claim for injunctive relief).

"As prisons are inherently dangerous environments," not every injury suffered by a prisoner at the hands of another inmate, is grounds for constitutional liability. *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (citing *Farmer*, 511 U.S. at 834). "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837).

Here, Plaintiff alleges that CO defendants failed to take proper steps to secure his safety.[5] However, Plaintiff's pleadings indicate that inmate Davis hid in his cell (presumably to avoid being handcuffed before the cell door was opened), then he rushed out and attacked Plaintiff with a homemade weapon. Even if Davis was known to be an enemy of Plaintiff's, there are no allegations indicating that any of the named CO defendants were aware of evidence that Davis was planning this attack on Plaintiff or that they knew Davis had a weapon. Overall, there are no factual allegations plead that demonstrate that there was a known substantial risk of harm to Plaintiff from Davis.

Furthermore, once the risk of harm from Davis became apparent, it is not clear from the allegations that CO defendants were deliberately indifferent to that risk. Although Plaintiff alleges that Reed did not try to intervene to help Plaintiff nor did she use her pepper spray to try to subdue

---

[5] As discussed previously in the Court's October 26, 2022 Order, Plaintiff's claim that correctional officer defendants violated SECC security protocols when they transported him one-on-one to the shower, fails to state a 42 U.S.C. § 1983 claim. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is well established that there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (*citing Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability).

Davis, Plaintiff does admit that Reed, Woodz, Far, Blake, and Smith chased Davis and Plaintiff, as they ran out of one housing unit and into another. Plaintiff also admits that they called out a warning to CO Stephenson about what was happening. Based on Plaintiff's description of the incident, it sounds like Reed was just as surprised by Davis's attack as Plaintiff himself. As such, it does not seem unreasonable that she backed into a wall in surprise and that she did not have time to respond with her pepper spray before Plaintiff fled with Davis chasing. As to the other CO defendants, Plaintiff asserts that they did not secure his safety or shield him from attack. However, again, from the facts plead, it seems that the CO defendants did react and eventually help subdue Davis.

The factual allegations demonstrate that CO defendants did intervene to protect Plaintiff; they just did not do it quick enough to prevent any injury to Plaintiff. There is no evidence of a deliberate or callous indifference to Plaintiff's safety by CO defendants. *See Curry,* 226 F.3d at 978-79 (citing cases where failure-to-protect claim dismissed against prison officials when an inmate was injured in a surprise attack by another inmate). Plaintiff's amended complaint fails to state an Eighth Amendment claim against CO defendants Reed, Woodz, Stephenson, Far, Blake, and Smith, in their official or individual capacities. These defendants will be dismissed.

**III.   Centurion Health Defendant**

Defendant Centurion Health[6] is the private corporation contracted to provide medical services to prisoners at SECC. In order to state a claim against a corporation like Centurion, Plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *Sanders v. Sears, Roebuck &*

---

[6] 'Centurion Health' replaced 'Corizon Health, Inc.' on November 15, 2021, as the medical services company contracted with MDOC to provide statewide correctional healthcare. The allegations at issue in Plaintiff's complaint occurred November 2-5, 2021, which was before defendant Centurion took over for Corizon. Regardless, the same analysis that applies here for Centurion, would apply to Corizon, if Corizon had been named as a defendant in this action.

9

*Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts an injury actionable under § 1983"); *see also Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 590 (8th Cir. 2004) *(*citing *Monell v. Dep't of Soc. Servs of City of New York,* 436 U.S. 658, 690 (1978)).

Other than naming Centurion as a defendant by writing the company name in the caption of his amended complaint, Plaintiff makes no assertions against this entity. The amended complaint is devoid of any allegations that a Centurion policy or custom was responsible for the alleged violations of Plaintiff's constitutional rights. As a result, the amended complaint fails to state a claim upon which relief can be granted as to defendant Centurion. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of *pro se* complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them).

## IV.    Defendant Nurse Williams[7]

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials

---

[7] In this section, the Court will discuss the reasons for dismissal of Plaintiff's individual capacity claim against Williams. As discussed above, an official capacity claim against an individual is actually just a claim against the individual's employer. In this case, Plaintiff states that nurse Williams is an employee of Centurion. However, it has already been found that Plaintiff's amended complaint fails to state a claim against Centurion. As such, Plaintiff also fails to state an official capacity claim against employee Williams.

10

actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted).  To that end, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted).  Deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  When a delay in treatment is alleged to have violated an inmate's constitutional rights, the objective severity of the deprivation should be measured by reference to the effect of the delay in treatment. *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016).  Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

In this case, Plaintiff alleges that he suffered unnecessary pain due to nurse Williams refusing to provide him with his prescribed pain medication when Plaintiff could not get up from his floor to come to the cell door to receive the medication.  Plaintiff states that this denial of medication occurred on November 4, 2021.  He does not specify a length of time for the denial of medication nor does he indicate that it lasted past that date.  On the following day, Plaintiff states that he was removed from his cell "for medical reasons."  ECF No. 11 at 13.  As such, it sounds like Plaintiff was only delayed medications/medical care for approximately one day.  Plaintiff states that he suffered pain as a result of the delay.

11

This is not sufficient to state a claim of deliberately indifferent medical care. A delay as brief and as non-detrimental as Plaintiff alleges does not state a claim for deliberate indifference to his serious medical needs.[8] *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (concluding that a one-month delay in treating a fractured finger did not rise to a constitutional violation); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990) (finding that a prisoner's claim for delay of one month between complaint of leg pain and visit with doctor was insufficient to state a constitutional claim absent allegations the condition required immediate attention or the delay in treatment aggravated the condition).[9]

## Conclusion

The allegations of Plaintiff's amended § 1983 complaint fail to state an Eighth Amendment failure to protect or deliberately indifferent medical care claim against any named defendant. As such, this case will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the amended complaint as to any defendant because the amended complaint fails to

---

[8] Plaintiff also attempts to assert that his serious medical needs were denied when he was not kept in the SECC's ICU for ten full days following his stitches, based on orders from a doctor at an outside hospital. However, Plaintiff alleges no damages from his change in location, and he does not specify who made the decision to place him in a long-term segregation cell instead of the ICU. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). Plaintiff fails to state a deliberate indifference claim as to this ICU issue as well.

[9] As best the Court can decipher, Plaintiff also attempts to assert a claim against nurse Williams that she tried to cover up her denial of his medication by issuing a false conduct violation against him that led to a doctor approving the discontinuation of his pain medications. As discussed above, a one-day denial of pain medication is not enough to state a claim of deliberate indifference so it is unclear why a false conduct violation would be necessary. Furthermore, as to a doctor discontinuing Plaintiff's pain medications, there are no facts alleged as to who this doctor is or any evidence indicating that the reason for discontinuation was related to conduct violations. Plaintiff fails to state a § 1983 claim against Williams based on these allegations.

state a claim upon which relief may be granted. Plaintiff's claims against all defendants are **DISMISSED without prejudice**. 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk of Court shall update the docket sheet in this matter to reflect that defendant Unknown Far's first name is "Jordan."

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 14th day of February, 2023.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE